UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | : | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | 17-CV-139 (GHW) |
| | : | ECF Case |
| GREGORY T. DEAN and | : | |
| DONALD J. FOWLER, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

### PLAINTIFF'S PRETRIAL MEMORANDUM OF LAW

Pursuant to Section 5(B)(iii) of this Court's Individual Rules, Plaintiff Securities and Exchange Commission respectfully submits this pretrial memorandum of law.

### Preliminary Statement

At the upcoming trial, the evidence will prove that Defendants Gregory Dean and Donald Fowler violated the antifraud provisions of the federal securities law as follows.[1]

*First*, Dean and Fowler, as licensed securities professionals, knowingly engaged in a scheme to defraud. Operating from the boiler-room-type[2] offices of a Syosset, NY, broker-dealer named J.D. Nicholas & Associates, Inc., Dean and Fowler cold called strangers hundreds of miles away, touting their ability to outperform the market. After a customer signed account-

---

[1] The antifraud provisions are Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder (15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5); and Section 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a)).

[2] "In securities parlance, the term 'boiler room' is typically used to describe a telemarketing operation in which salespeople call lists of potential investors in order to peddle speculative or fraudulent securities. A broker using so-called 'boiler-room tactics' generally gives customers a high-pressure sales pitch containing misleading information about the nature of the investment, as well as the broker's own commission on the sale." *SEC v. Wolfson*, 539 F.3d 1249, 1252 n.6 (10th Cir. 2008) (citations omitted).

opening documents, Dean and Fowler launched their strategy of in-and-out trading, with sizable per-trade costs, using borrowed funds.

The strategy was doomed from the start and the customers had no chance of earning even a modest profit. Overall, the losses in the twenty-six customer accounts exceeded $1.2 million; the accounts would have had to achieve, on average, a return of 168% over one year just to break even. Dean and Fowler, however, received a total of $616,111 in commissions.

The Defendants knew what they were doing, and the evidence of scienter will be essentially undisputed: they admit recommending the strategy, making the trading decisions, and imposing the costs. Additional proof of scienter arises from the Defendants' violation of one of the most fundamental duties of a broker: the duty to conduct due diligence and to have a reasonable basis to believe a recommended strategy was suitable, both for some customers and for their specific customers. There will be no credible evidence the Defendants did anything at all to fulfill this duty, which constitutes fraud.

***Second***, Dean and Fowler engaged in unauthorized trading in customer accounts, as customer testimony will prove. Additional evidence of unauthorized trading consists of a comparison of the trading records and the records of the phones used by Dean and Fowler. Although Dean and Fowler were required to obtain customer authorization before each trade, the analysis shows there was no phone contact between Dean or Fowler and a customer prior to half of the nearly 3,000 trades at issue.

***Third***, Dean and Fowler made material misrepresentations and omissions to customers. In particular, the Defendants concealed from their customers the fact that the cumulative impact of the per-trade costs would, in every instance, defeat any realistic chance of breaking even. This highly material information is something Defendants knew but the customers did not.

Defendants also affirmatively misrepresented their intended strategy as one that had the potential for profit, and omitted material facts, such as that Dean and Fowler had no reasonable basis for their strategy and that, due to the frequency of trading and the level of commissions, trading would have to yield improbably astronomic returns to simply break even.

*Fourth*, Dean and Fowler acted unreasonably, and therefore negligently, by making recommendations with no reasonable basis, engaging in unauthorized trading, and making material misrepresentations and omissions.

## Argument

To establish a violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the SEC must show a materially false or misleading statement or omission, or use of a fraudulent scheme or device; in connection with the purchase or sale of securities (an element not in dispute at trial); and scienter.  Section 17(a)(1) of the Securities Act prohibits fraud in the offer or sale of securities and also requires scienter.  The standard for proving a violation of Section 17(a)(1) is essentially the same as for Section 10(b) and Rule 10b-5.  *See*, *e.g.*, *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 335-36 (S.D.N.Y. 2004); *SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 861-62 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1348 (2d Cir. 1998).  "Scienter 'may be established through a showing of reckless disregard for the truth.' 'Reckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'"  *SEC v. Milan Capital Grp., Inc.*, No. 00 Civ. 108, 2000 WL

1682761, at *5 (S.D.N.Y. Nov. 9, 2000) (citing *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998)); *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 46-47 (2d Cir. 1978).[3]

### I. Dean And Fowler Committed Fraud

Defendants participated in a fraudulent scheme that consisted, among other things, of cold calling customers and recommending and implementing an unsuitable investment strategy. Defendants had no reasonable basis to believe that the strategy was suitable—for any customer, or for their specific customers. Dean and Fowler frequently and repeatedly sold stocks within days of purchase and arbitrarily imposed high per-trade costs regardless of trade profitability. Defendants' use of leverage, which increased the accounts' buying power, added more risk without an increased chance of reward, given Defendants' continued high-cost trading. The strategy, with near-certain losses and virtually no chance of eking out even a modest profit, was suitable for no one, let alone any specific customer. Dean and Fowler, who bear responsibility for the trading decisions, did nothing to determine how such an irrational strategy was suitable.

A broker's failure to have an adequate basis for a customer recommendation constitutes "intentional fraud and reckless misconduct." *Hanly v. SEC,* 415 F.2d 589, 596 (2d Cir. 1969). In *Hanly*, the Second Circuit held that brokers committed fraud by recommending an over-the-counter stock without a reasonable basis and without disclosing to customers adverse information that was "reasonably ascertainable." *Id*. at 597. *Hanly* has since been frequently cited for the principal that "a broker violates Rule 10b-5 when he makes a recommendation to a customer without an 'adequate and reasonable basis for such recommendation.'" *Marbury Mgt., Inc. v. Kohn*, 470 F. Supp. 509, 513 n.5 (S.D.N.Y. 1979), *rev'd on other grounds*, 629 F.2d 705 (2d Cir. 1980) (citation omitted); *see also Milan Capital,* 2000 WL 1682761, at *5-7 (broker

---

[3] The parties have stipulated that the conduct at issue was "in connection with" the "purchase or sale and "offer or sale" of securities.

acted fraudulently by making recommendation without an adequate basis, citing *Hanly*, 415 F.2d at 596).[4]

In *SEC v. Hasho*, the Court found brokers who recommended highly speculative stocks without a reasonable basis liable under the antifraud provisions. 784 F. Supp. 1059, 1107-1109 (S.D.N.Y. 1992) (citing *Hanly*, 415 F.2d at 595-596). And in *SEC v. Platinum Investment Corp.*, No. 02 Civ. 6093, 2006 WL 2707319, at *2-3 (S.D.N.Y Sept. 20, 2006), the Court found a broker liable because, when making customer recommendations, the broker "did nothing" to confirm that his recommendations had any reasonable basis. Citing *Hanly*, the court stated that customers "are entitled to presume that the representations made were the result of reasonable investigation." *Id.* at *3. The broker in *Platinum*, much like Dean and Fowler, "failed to take even the most rudimentary steps to make sure his recommendations to his clients were responsible and reasoned," and thereby committed fraud. *Id.*[5]

Similarly, in *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1 (D.D.C. 1998), the court found that brokers recommended a trading program to customers without conducting any due diligence. In granting the SEC's summary judgment motion, the Court held that the brokers'

---

[4] *See also SEC v. Shainberg*, 316 F. App'x. 1, 2 (2d Cir. 2008) (affirming jury verdict finding brokers engaged in scheme to defraud; "'[b]rokers and salesmen are under a duty to investigate' . . . A breach of this duty can constitute reckless disregard and, therefore, the requisite scienter to make out a violation"); *Abbodante v. SEC*, 209 F. App'x. 6, 7 (2d Cir. 2006) ("Abbondante's failure to investigate the truth of [his customer recommendations] satisfies the scienter element of section 10(b) and Rule 10b-5").

[5] The Financial Industry Regulatory Authority (FINRA), like *Hanly,* requires brokers "to have a reasonable basis to believe, based on reasonable diligence, that the recommendation is suitable for at least *some* investors" and for "a particular customer based on that customer's investment profile." FINRA Rule 2111.05 (emphasis in original). The FINRA rule also makes clear that the reasonable basis duty applies to "a recommended transaction or investment strategy." The degree of diligence is fact-specific, with a risky strategy requiring a greater degree of diligence. *Id.*

5

conduct in making customer recommendations "without any basis" was "patently reckless behavior." 69 F. Supp. 2d at 10.

Like the brokers in *Hanly*, *Hasho*, *Platinum* and *Kenton Capital*, Dean and Fowler violated the antifraud provisions by repeatedly made customer recommendations with no reasonable basis. Their conduct was intentional, occurred over a period of three years and caused losses for twenty-six customers.[6]

## II. Dean And Fowler Engaged In Unauthorized Trading

"[I]t is well-settled that claims under Rule 10b-5 arise when brokers purchase or sell securities on their clients' behalf without specific authorization. For example, a claim for unauthorized trading, which occurs when a broker intentionally places trades without obtaining the customer's approval, historically has been well-established under Rule 10b–5." *Caiola v. Citibank, N.A.*, 295 F.3d 312, 323 (2d Cir. 2002); *see also Hasho*, 784 F. Supp. at 1110 (brokers who engaged in a "pattern of unauthorized transactions" violated Rule 10-b).

Dean and Fowler knew that they were required to seek and obtain customer authorization prior to entering an order. At trial, the jury will hear customer testimony that many of the trades in their accounts were not authorized by them.

In addition, because the Defendants communicated with their customers solely by telephone, the phone records should show a phone call between a customer and a Defendant before each trade. A detailed analysis of the phone records listing the incoming and outgoing

---

[6] The Defendants' defense centers on the argument that the customers were sophisticated and experienced investors who were fully capable of understanding the Defendants' strategy. This defense fails as a matter of law. In *Hanly*, the Second Circuit found that "the sophistication of the customers" was "irrelevant" to the broker's own duties. 415 F.2d at 594. Similarly, in *Abbondante*, the Court held that "the investor's knowledge of the speculative nature of the investments" does not absolve the broker from liability for "recklessly making false statements." 209 F. App'x. at 7; *see also* SEC's Mot. *in Limine*, dated Apr. 1, 2019.
.

calls from the Defendants' office and cell phones shows that for more than half of the nearly 3,000 total trades, there was no phone call between a customer and one of the Defendants on the day of the trade.

### III. Dean And Fowler Made Material Misrepresentations And Omissions To Customers

As the Second Circuit held in *Hanly*, by making a recommendation a broker "implicitly represents he has an adequate basis for the opinion he renders"; accordingly, making a recommendation without disclosing the lack of a reasonable basis constitutes a misrepresentation. 415 F.2d at 596; s*ee also Kenton Capital*, 69 F. Supp. 2d at 8 (finding misrepresentations and omissions by brokers who "failed to disclose [their] lack of due diligence about the trading program").

Dean and Fowler failed to disclose to customers their lack of a reasonable basis, and they also misrepresented their strategy as having an opportunity at profitability. These knowing misrepresentations and omissions violated the antifraud provisions. *See SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1250 (11th Cir. 2012) (brokers' oral misrepresentations and omissions to individual investors that conflict with written disclosures "must be considered for purposes of materiality"); *see also Hasho*, 784 F. Supp. at 1110 (without knowledge of the costs associated with a recommended trade, customers were "deprive[d] . . . of the knowledge that [their] registered representative[s] might be recommending a security based upon the registered representative's own financial interest rather than the investment value of the recommended security.").

### IV. Dean and Fowler Acted Negligently

The evidence establishes that Defendants failed to act reasonably. No reasonable person would recommend a trading strategy that had no chance of turning a profit. No reasonable

person would impose trading costs that erased the equity in the accounts over time. And no reasonable person would have concealed from customers the truth about their disastrous strategy. This suffices to establish liability under Section 17(a)(2) and (a)(3) of the Securities Act. *See SEC v. Jankovic*, No. 15 Civ. 1248, 2017 WL 1067788, at *16-17 (S.D.N.Y. Mar. 21, 2017) (by making misstatements and omissions to customers, brokers did not act as "a reasonable person" would; granting SEC's motion for summary judgment on claims under Section 17(a)(2) and (a)(3) of the Securities Act).[7]

## Conclusion

The evidence proves that Defendants committed fraud by engaging in intentional conduct that caused significant investor losses.

Dated: New York, New York
       April 1, 2019

Respectfully submitted,

By: /s *David Stoelting*
    _____
    David Stoelting
    Jorge G. Tenreiro
    Kristin M. Pauley
    *Attorneys for Plaintiff*
    U.S. Securities and Exchange Commission
    New York Regional Office
    200 Vesey Street, Suite 400
    New York, New York 10281-1022
    Tel:  (212) 336-0174 (Stoelting)
          (212) 336-9145 (Tenreiro)
          (212) 336-0983 (Pauley)

---

[7] As noted in the Joint Pretrial Order, although churning was one of the theories of liability alleged in the Amended Complaint, Dkt. 25 at ¶¶ 47-54, the SEC does not intend to present the churning claim to the jury. As a result, the factual issue of whether the Defendants "exercised control" of their customers' accounts – which is an element of a churning claim but not a reasonable basis claim – will not be before the jury.