# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Securities and Exchange Commission,            )
                                               )
                    Plaintiff,                 )
                                               )          Case No. 17-cv-139-GHW
            v.                                 )          Hon. Gregory H. Woods
                                               )
Gregory T. Dean and Donald J. Fowler,          )
                                               )
                    Defendants.                )
                                               )

---

Defendants' Brief In Opposition To Plaintiff's Pre-Trial Memorandum of Law.

---

Dated: April 8, 2019
       New York, NY

Respectfully submitted,

McCORMICK & O'BRIEN, LLP

By: _____ .
    Liam O'Brien, Esq.
    Harry J. Delagrammatikas, Esq.
9 East 40th Street, Fourth Floor
New York, New York 10016
Tel: (212) 320.8972 x 700
Email: LOBrien@MCOBlaw.com
*Attorneys for Defendants*
*Gregory T. Dean and*
*Donald J. Fowler*

Pursuant to Section 5(B)(iii) of this Court's Individual Rules, McCormick & O'Brien LLP, on behalf of Defendants Gregory Dean and Donald Fowler, respectfully submits Defendants' Opposition to Plaintiff's Pre-Trial Memorandum of Law.

## Preliminary Statement

Within the first four short paragraphs of its memorandum of law, the SEC asserts that Defendants knowingly engaged in a scheme to defraud and then proceeds to use various "churning" claim dog-whistles, referring to Defendants' offices as "boiler-room-type offices in Syosset" [1] where they engaged in high frequency trading ("in and out trading, with sizable per-trade costs using borrowed funds") which resulted in high cost to equity ("…the accounts would have to achieve, on average, a return of 168% to break even.") and which Defendants "knew what they were doing….they admit….making the trading decisions…".   In essence, the SEC argues that there was no reasonable basis for the investment strategy employed in the customer accounts because the strategy involved churning.   However, having pointedly withdrawn its claims for churning, the SEC should not be permitted to argue that the accounts were churned by merely cloaking those arguments under the guise of "reasonable basis". [2]

---

[1] Id. "In essence, the SEC alleges that defendants engaged in a "boiler room" operation, which the Second Circuit has described as:

> a temporary operation established to sell a specific speculative security. Solicitation is by telephone to new customers, the salesman conveying favorable earnings projections, predictions of price rises and other optimistic prospects without a factual basis. The prospective buyer is not informed of known or readily ascertainable adverse information; he is not cautioned about the risks inherent in purchasing a speculative security; and he is left with a deliberately created expectation of gain without risk.

*Hanly v. SEC,* 415 F.2d 589, 597 n. 14 (2d Cir. 1969).

[2] This is not to say that the SEC cannot assert a claim that the brokers failed to conduct research to support their various investment strategies such as the "event driven" strategy they simply cannot use any of the elements of

It is obvious why the SEC has taken this tack.  The SEC withdrew its churning claims because it did not believe that it could meet the burden of proving each of the elements of churning.  The SEC wants to cherry pick some of the elements of churning while slyly ignoring the others in the hope that the Court will indulge these prevarications and decline to apply nearly 60 years of federal case law related to Section 10(b) and churning.  If this tack fails, as it should, the SEC should be precluded from resurrecting the churning claims that it has now waived and should be precluded from presenting evidence of churning (high frequency trading, turnover, high cost to equity, etc.) under the guise of its "reasonable basis" argument.  The SEC should also be precluded from arguing that the defendants were engaged in fraud because they failed to disclose that the strategy involved churning or whatever synonyms the SEC is using as a substitute for churning, again "high frequency trading", turnover, "high cost to equity".

### A.  If permitted to Pursue a Claim for Churning, the SEC is Obliged to Establish the Element of Control

Assuming arguendo that the Court allows the SEC to resurrect its claims for churning, as we note in our Motion in Limine, the SEC amended complaint only alleged that the Defendants churned the accounts of three customers - Customers Dellorfano, Goins and Weathers. Accordingly, the SEC would be limited to presenting evidence of churning in those three customer accounts only.

Even then the SEC would need to present customer testimony relevant to the issue of control.  Every United States Circuit Court of Appeal that has addressed churning has concluded that the broker's actual or de facto control of the trading is an essential element of churning.[3]

---

churning in order to do so.

[3] 1st Circuit: "Churning is commonly said to have three elements: (1) control of the customer's account by the broker, either explicit or de facto; (2) excessive trading in light of the customer's investment objectives; and (3) scienter -- the required state of mind for liability under Section 10(b) and Rule 10b-5." *Rizek v. SEC*, 215 F.3d 157, 162 (1st Cir. 2000).

For the reasons set forth in Section F of Defendants' Pre-Trial Memorandum of Law the SEC

---

2nd Circuit: "In order to recover, the customer must show that the dealer effectively exercised control over trading in the account and manipulated the account to his benefit." *Newburger, Loeb & Co*., 563 F.2d at 1069.

3rd Circuit: "The Commodity Futures Trading Commission, the federal regulatory agency responsible for the administration and enforcement of the Commodities Exchange Act, 7 U.S.C. § 1 et seq. (1982), defines churning as "the excessive trading of an account by a broker with control of the account, for the purpose of generating commissions, without regard for the investment or trading objectives of the customer." *Bowley v. Stotler & Co*., 751 F.2d 641, 644 (3d Cir. 1985) (emphasis added).

4th Circuit: "Churning occurs when a broker, exercising control over the volume and frequency of trading, abuses his customer's confidence for personal gain by initiating transactions that are excessive in view of the character of the account." *Carras v. Burns*, 516 F.2d 251, 258 (4th Cir. 1975).

5th Circuit: "Churning occurs when a securities broker enters into transactions and manages a client's account for the purpose of generating commissions and in disregard of the client's interests . . . . Once an investor proves that: (1) the trading in his account was excessive in light of his investment objectives; (2) the broker in question exercised control over the trading in the account; and (3) the broker acted with the intent to defraud or with willful and reckless disregard for the investor's interests . . . . the broker may be held liable for a violation of the federal securities laws under section 10(b) of the Securities Exchange Act of 1934 . . . . and SEC Rule 10b(5)*." Laird v. Integrated Res*., 897 F.2d 826, 838 (5th Cir. 1990)

6th Circuit: "Churning consists of three elements, all of which must be present: (1) the trading must be excessive in light of the customer's investment objectives; (2) the broker must exercise control over the account; (3) the broker must act with intent to defraud or with willful and reckless disregard of the customer's interests." *Craighead v. E.F. Hutton & Co*., 899 F.2d 485, 489 (6th Cir. 1990) (citing *M & B Contracting Corp. v. Dale,* 795 F.2d 531, 533 (6th Cir. 1986)) (emphasis added)

7th Circuit: "There is no single test or formula for proving that churning has occurred, but it is generally said that a plaintiff must show (1) that the broker exercised control over the transactions in the account and (2) that the amount of trading was excessive." *Costello v. Oppenheimer & Co.,* 711 F.2d 1361, 1368 (7th Cir. 1983).

8th Circuit: "To establish churning, it is necessary to prove that the dealer has control of the account and that there has been excessive trading in it." *Booth v. Peavey Co. Commodity Servs*., 430 F.2d 132, 133 (8th Cir. 1970)

9th Circuit: "It is settled that when a broker, unfaithful to the trust of his customer, churns an account in the broker's control for the purpose of enhancing the broker's commission income and in disregard of the client's interest, there is a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and Securities and Exchange Commission Rule 10b-5. There must be a concurrence of all three elements . . ," *Follansbee v. Davis, Skaggs & Co.*, 681 F.2d at 676 (emphasis added); *see also Mihara v. Dean Witter & Co*., 619 F.2d 814, 821 (9th Cir. 1980).

10th Circuit: "Under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10b-5, a broker may be held liable for violation of federal securities laws once an investor proves that: (1) the trading in his account was excessive in the light of his investment objectives; (2) the broker in question exercised control over the trading in the account; and (3) the broker acted with an intent to defraud or with willful and reckless disregard for the investor's interests." Hotmar, 808 F.2d at 1385 (emphasis added).

11th Circuit: "The plaintiff must prove three elements in order to establish a cause of action for churning: '(1) the trading in his account was excessive in light of his investment objectives; (2) the broker in question exercised control over the trading in the account; and (3) the broker acted with the intent to defraud or with willful and reckless disregard for the investor's interest.'" Arceneaux v. Merrill Lynch, Pierce, Fenner & Smith, 767 F.2d 1498, 1501 (11th Cir. 1985) (citing *Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413, 1416–17 (11th Cir. 1983)).

cannot establish control.

**B.   Defendants Lack The Requisite Scienter**

The SEC, as a matter of law, cannot establish a claim for fraud because they are unable to establish legally cognizable proof of scienter.   "The requisite state of mind, or scienter, in an action under section 10(b) and Rule 10b-5, that the plaintiff must allege, is an intent to deceive, manipulate or defraud." *In re Symbol Techs., Inc.  Sec.  Litig.*, No. 05-CV-3923 (DRH) (AKT), 2013 U.S. Dist. LEXIS 171688, at  *26 (E.D.N.Y. Dec. 5, 2013), *citing Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001)  "[A]n inference of scienter must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Symbol Techs.*, at *27.

As indicated more fully in Defendants' Pre-Trial Memorandum of Law, Defendants and their brokerage firm provided the customers with an extensive amount of information disclosing the risks and costs associated with the investment strategies that they had decided to pursue.   The SEC ignores this documentation and related disclosures, describing it pejoratively as boilerplate.  In fact it is evidence of Defendants efforts to provide their clients with the necessary information they would need to make informed decisions, the antithesis of conscious misbehavior or recklessness.

Moreover, merely invoking the magic words "motive" and "opportunity" is not sufficient to establish scienter. *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 518

(S.D.N.Y. 2005). Rather, the plaintiff must allege "facts showing the type of particular circumstances that [the Second Circuit] has recognized will render motive and opportunity probative of a strong inference of scienter." *Id*. (quoting *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2005). The SEC allegations with regard to scienter are also deficient because the SEC has not alleged in the Amended Complaint that Fowler or Dean had motive or opportunity to commit fraud, aside from "generating commission". The case law indicates that is insufficient basis to establish scienter. A motive to earn commissions or fees is not sufficient to plead scienter. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 428 (S.D.N.Y. 2003). In fact, plaintiff's claim that defendants engaged in short selling for profits is exactly the kind of generalized profit-seeking motives that courts have repeated rejected. *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416 (S.D.N.Y. 2010); *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190 (2d Cir. 2008). If generating fees and commission was motive sufficient to satisfy the element of scienter, this would contradict the purpose of requiring the plaintiff to prove scienter. As the Southern District stated:

> [Plaintiffs] have alleged no gain other than the fact that the [accounting] firm was compensated for its professional services. It would defy common sense to hold that the motive element of the [ ] scienter analysis would be satisfied merely by alleging the receipt of normal compensation for professional services rendered, because to do so would effectively abolish the requirement, as against professional defendants in a securities fraud action, of pleading facts which support a strong inference of scienter.

*Friedman v. Arizona World Nurseries Ltd. Partnership*, 730 F. Supp. 521, 532 (S.D.N.Y. 1990). *See also Melder v. Morris*, 27 F.3d 1097, 1104 (5th Cir. 1994)("Simply put, accepting the plaintiffs' allegation of motive as sufficient would make a mockery of Rule 9(b) by effectively eliminating the scienter requirement as to securities underwriters since all underwriters are, of

course, fee seekers").

Where the desire to earn fees is inherent to the position and is generally possessed by all those who share this position, this is not sufficient to allege a "concrete and personal benefit." *Cohen v. Stevanovich*, *supra*, 722 F. Supp. 2d at 429 (quoting *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 227 (S.D.N.Y. 2008)("The desire to earn management fees is a motive generally possessed by hedge fund managers, and as such, does not suffice allege a 'concrete and personal benefit' resulting from fraud")).

"Allegations of heavy trading or large profits, without further information, do not satisfy the scienter requirement."  *Cohen v. Stevanovich*, *supra*, 722 F. Supp. 2d at 429 (quoting *In re Cree, Inc. Sec. Litig*., 333 F. Supp. 2d 461, 476-77 (M.D.N.C. 2004)).   Although large commissions generated by in-and-out trades may be inappropriate for unsophisticated investors who desire a low-risk strategy, this kind of trading may be appropriate for sophisticated investors who desire a speculative strategy.  *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252 (3d Cir. 2008). Moreover, the SEC's allegations that the Defendants had no basis to believe their strategy was suitable are similar to insufficient types of allegations such as "if Defendants had properly done their jobs, they would have uncovered the truth" which "have always been insufficient to establish scienter.*"  In re Indep. Engergy Holdings PLC Sec. Litig*., 154 F. Supp. 2d 741, 765 (S.D.N.Y. 2001)(abrogated with respect to unrelated issues by *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003)).

### C.   There Can Be No Material Misrepresentation or Omission Where The Customers Have Been Fully Informed Regarding All of the Material Risks.

"There can be no omission where the allegedly omitted facts are disclosed."  *In re Progress Energy, Inc.*, 371 F. Supp. 2d 548, 552 (S.D.N.Y. 2005).  *See also*, *Abuhamdan v. Blyth, Inc., supra*, 9 F. Supp. 3d at 189.  A plaintiff cannot assert that defendants did not disclose

6

risks associated with a brokerage account when those risks were either obvious or disclosed in the account documents.  *See Grey v. Gruntal & Co.*, 1987 U.S. Dist. LEXIS 4031, (S.D.N.Y. May 21, 1987)(citing *Zerman v. Ball*, 735 F.2d 15, 21 (2d Cir. 1984)("Bypassing the fact that the nature of a margin account was revealed in the margin agreement signed by [plaintiff], it is clear that the information [plaintiff] claims was withheld from her was so basic that any investor could be expected to know it").

Moreover, where a customer engages in margin trading in their account, and the customer received monthly accounts statements without "once indicat[ing] that anything in the account happened without his authority, or complained about the management of his account", the Southern District has concluded that the customer agreed to the terms of the margin agreement, even where the customer alleged the signature on the document was a forgery.  *Blashka v. Greenway Capital Corp.*, 1995 U.S. Dist. LEXIS 15195 at *18 (S.D.N.Y. Oct. 17, 1995).

It is irrefutable that information regarding fees and costs[4] and the speculative trading strategy being employed in their accounts, was repeatedly disclosed to all of the customers on their new account forms, margin agreements, monthly accounts statements, trade confirmations and compliance letters.

D.  **The SEC's "Reasonable Basis" Suitability Argument Cannot Be Reconciled With The Facts**

"Reasonable basis" suitability requires that a registered representative possess an "adequate and reasonable" understanding that the recommended transaction could be suitable *for at least some customers* before he can conclude that it is suitable for any particular customer." *See F.J. Kaufman and Co.*, 50 S.E.C. 164, 168 (1989) (quoting <u>Hanly v. SEC</u>, 415 F.2d 589, 597 (2d Cir. 1969)). A representative violates this element of suitability when he fails to conduct a

---

[4] Evidence of fees and costs would only be relevant to a churning claim.  Should the Court determine that the SEC is precluded from arguing churning then this evidence would be irrelevant and inadmissible.

reasonable investigation to comprehend fundamentally the consequences of his recommendation and the potential risks and rewards that inhere to it. *See Michael Frederick Siegel*, Exchange Act Release No. 58737, 2008 SEC LEXIS 2459, at *28 (Oct. 6, 2008), aff'd in relevant part, 592 F.3d 147 (D.C. Cir. 2010).

For the reasons set forth above, the SEC is precluded from arguing that churning is proof that the defendants' did not fulfill their obligation to have a reasonable basis for their recommendations. The SEC may concoct some other basis to underpin their claims that Defendants had no reasonable basis for their recommendations but should be precluded from presenting evidence of churning (high frequency trading, turnover, high cost to equity, etc.) under the guise of its "reasonable basis" argument.

The SEC argues that the case at bar is analogous to cases in which, a broker knew that an investment in a company he recommended, which he knew was suffering financially, would fail[5] and a case where a broker who recommending low priced securities (penny stocks) in a boiler room knew those investments would fail[6]. In each of those instances, the broker either knew of material facts which he intentionally failed to disclose (*Hanly* and *Hasho*) or failed to show the slightest interest in ascertaining facts which would assist him in determining whether the trading program was suitable for their customers (*Kenton Capital*)[7]. This is not true of the Defendants. As indicated more fully in Sections B and C above, the Defendants in this case neither failed to disclose material facts, intentionally or otherwise, nor acted with the recklessness or willful blindness described in these cases.

Assuming arguendo that the Court permits the SEC to argue that high frequency trading (ie. churning) is evidence that the strategies pursued by Defendants Dean and Fowler were not

---

[5] *Hanly v. SEC*, 415 F.2d 589, 597 n. 14 (2d Cir. 1969
[6] *SEC v. Hasho*, 784 F. Supp. 1059, 1111 (S.D.N.Y. 1992)
[7] *SEC v. Kenton Capital Ltd.*, 69 F. Supp. 2d. 1 (DDC 1998)

suitable **for any customer,** merely establishing that the customers lost money is not enough to prove unsuitability under the law.  Correlation is not causation.  The SEC must prove the strategies were unreasonable for any customers-in every instance, period.

Speculative strategies are not suitable for all investors, but are certainly suitable for customers that have selected an investment objective of speculation. *See* Defendants' Pre-Trial Memorandum of Law the SEC at Section B.  The customers in the Amended Complaint were aware that they were engaged in strategies that involved active trading and the risks were disclosed. *Id.*  They were also aware of the commissions they were paying. *Id.*  The customers knew they could lose money engaging in such strategies, a lot of money, and they were willing to take those risks in pursuit of high rewards. *Id.* at Section B.  The implication that Defendants' "reasonable basis suitability" obligations are not in communion with Defendants' "customer specific suitability" obligations under these circumstances is nonsensical.

### E. The SEC's Arguments regarding the alleged unauthorized trading are unavailing.

In the interest of avoiding repetition, with regard to the SEC's allegations of unauthorized trading, the Defendants respectfully direct the Court to the arguments set forth in Defendants' Motion In Limine To Exclude Evidence Related To Alleged Unauthorized Trades, Unsuitability And Churning dated April 1, 2019, which addresses the significant evidentiary issues raised by the telephone records upon with the SEC's claims rely and the lack of customer testimony on this issue.

### Conclusion

Based on the foregoing, the Court should resolve these issues in favor of the Defendants.