

**UNITED STATES**
## SECURITIES AND EXCHANGE COMMISSION
**New York Regional Office**
**Brookfield Place, 200 Vesey St.**
**New York, NY 10281-1022**

**DIVISION OF**
**ENFORCEMENT**

Jorge Tenreiro
Senior Trial Counsel
(212) 336-9145 (direct)

June 4, 2019

**VIA ECF AND OVERNIGHT DELIVERY**

The Honorable Gregory H. Woods
United States District Judge
United States Courthouse
500 Pearl Street, Room 2260
New York, NY 10007

    **Re:**    *SEC v. Gregory T. Dean and Donald J. Fowler,* 17-cv-139-GHW

Dear Judge Woods:

    We represent Plaintiff Securities and Exchange Commission ("SEC") in the above-referenced case. We write to provide the Court with the SEC's updated exhibit list, to respectfully request guidance from the Court on two pending evidentiary issues, to provide additional citation to authority regarding disputed Jury instructions, and to respond to the Court's request for follow-up regarding certain of the SEC's proposed summary exhibits.

**I.    Certain Disputed Matters**

    As the Court may surmise from the SEC's updated exhibit list, attached hereto as Exhibit A, the parties have resolved the overwhelming majority of objections with respect to the SEC's proposed trial exhibits. However, two significant issues for resolution by the Court remain, which affect the exhibits the SEC may use at trial and the form in which one witness will be called.

    *a.   Request on Consent that Nonparty Witness Ian Frimet Be Permitted to Testify By Live Video Link*

    Exhibits 17 and 18 on the SEC's exhibit lists consist of two e-mails from Ian Frimet ("Frimet"), who acted as counsel to Defendants as well as to J.D. Nicholas during the SEC's investigation of this matter, and briefly as Defendants' counsel when this case was filed in January 2017 (D.E. 9). The emails are submitted as Exhibits B and C hereto. In these emails, Frimet responded to the SEC's request for a list of service providers and phone numbers used by Defendants, as part of the SEC's investigation into whether Defendants executed unauthorized trades in their customers' accounts. As the Court is aware, at trial, the SEC will present summary exhibits prepared by analyzing the data obtained by subpoenaing the records for the phone numbers contained in Frimet's emails (Exhibits 28A, 28B, and 28C (the "Summary Exhibits")).

The SEC respectfully requests, and Defendants have consented, that Frimet be permitted to testify via live video link, as permitted by Federal Rule of Civil Procedure 43(a) "for good cause." The emails are relevant because they show the phone numbers the Defendants used and rebut the Defendants' "completeness" argument with respect to the phone records. Frimet lives and works in San Diego, CA, and it would be a burden and significant expense for him to testify live. His testimony, moreover, will be brief, offered primarily to authenticate the two emails and address any hearsay concerns. Under these circumstances, good cause exists to permit testimony via live video.

"[T]rial courts have repeatedly, in civil cases, taken testimony by telephone and closed circuit television. The jury has never had any difficulty in evaluating such testimony." *United States v. Gigante*, 971 F. Supp. 755, 758 (E.D.N.Y. 1997) (permitting Government witness to testify by closed circuit television); *see also Beltran-Tirado v. INS*, 213 F.3d 1179, 1185-1186 (9th Cir. 2000) (upholding judge's decision to permit an "out-of-state witness" to testify telephonically because the witness, who was subject to cross-examination, "lived in Missouri and the hearing was in San Diego"); *Cameron v. Arizona Bd. of Regents*, No. 08 Civ. 1490 (ROS), 2011 WL 13137864, at *2 (D. Ariz. Apr. 22, 2011) (permitting witness to testify "via video-conference" due to "expense and burden" of requiring him to attend trial personally); *FTC v. Swedish Match N. Amer.*, 197 F.R.D. 1, 2 (D.D.C. 2000) (permitting testimony by "live video feed" and noting trend toward finding "geographical limitation" to constitute good cause under Rule 43(a); "there is no practical difference between live testimony and contemporaneous video transmission"). For the foregoing reasons, the SEC respectfully requests that it be permitted to offer Frimet's testimony via live video link.[1]

### b. SEC's Request for Judicial Notice of Stock Market Performance

Although the parties have again met and conferred on the SEC's request that the Court take judicial notice, under Rule 201 of the Federal Rules of Evidence, of the stock market returns for the NASDAQ and the S&P 500 for each year from 2011 through 2014, the parties have not been able to reach agreement. Accordingly, the SEC respectfully requests, for the reasons stated in its Letter of May 14, 2019 (D.E. 124), that the Court take judicial notice of the NASDAQ and S&P 500 returns.

---

[1]     Defendants will not stipulate to the admissibility of the emails without Frimet, arguing that the emails are not self-authenticating and constitute hearsay. Defendants are incorrect. For one, "statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *United States v. Margiotta*, 662 F.2d 131, 142-43 (2d Cir.1981). "[C]ourts in this Circuit have reasoned that an attorney's statements or documents discussing legal strategy may be admissible as party admissions" under a number of circumstances, including if "the attorney is shown to be the party's agent with regard to the making of the statement [or] the statements concern a matter within the attorney's employment." *Bensen v. American Ultramar Ltd.*, No. 92 Civ. 4420 (KMW), 1996 WL 422262, at *9 (S.D.N.Y. July 29, 1996); *see also Wechsler v. Hunt Health Systems, Ltd.*, No. 94 Civ. 8294 (PKL), 2003 WL 22764545, at *2-3 (S.D.N.Y. Nov. 21, 2003) (admitting as non-hearsay letter by party's attorney on discovery matter). The emails are additionally admissible as substantive evidence under a myriad other provisions, including the provisions for prior recollections recorded, Fed. R. Evid. 803(5), and for business records, Fed. R. Evid. 803(6), and the residual exception to the hearsay rule.

## II.      Updates on Other Matters

### a.   Additional Citation to Authority for Proposed Jury Instructions

As the Court is aware, on April 1, 2019, the parties submitted Joint Proposed Jury Instructions, which included certain disputed instructions (D.E. 100). On May 14, 2019, following a Jury trial that began on April 30, 2019, another Court in this District instructed a federal jury in the matter of *SEC v. American Growth Funding II, LLC*, No. 16 Civ. 828 (KMW) (S.D.N.Y.) ("*AGF II*"). A copy of the relevant portions of the transcript of this charge is attached hereto as Exhibit D (the SEC can provide the Court with the full transcript if that would be helpful to the Court). The instructions given in *AGF II* provide additional support to the SEC's request with respect to several of the currently disputed proposed instructions.

First, Defendants requested a "Two Separate Defendants" instruction (D.E. 100 at 30), but provided only out of Circuit authority for the request. As the Court can surmise, no such instruction was given in *AGF II*. That case involved two individuals with two very distinct positions and roles in the charged fraudulent scheme (one was a selling broker and the other the Chief Compliance Officer at the broker-dealer). Here, the Two Separate Defendants instruction is even less proper.

Defendants have also objected to the SEC's request that the Court instruct the Jury about evaluating a witness's credibility based in part on his or her interest in the outcome of the matter (D.E. 100 at 51). As the SEC pointed out in the joint submission, this is a standard instruction, given by this Court and others in this District. *Id.* The instruction was given again in *AGF II*, in almost identical form as the SEC has requested in this case. Ex. D at 1182:14-1183:13.

Defendants have also objected to several of the SEC's requested language in the proposed instruction regarding materiality. Specifically, Defendants have objected to the SEC's request that the Court instruct the Jury (i) about an obligation to disclose when disclosure is required to prevent a prior statement from becoming false or misleading, (ii) that the SEC is only required to show one material misstatement, and (iii) that materiality does not require proof that an individual would have changed his or her mind before investing (D.E. 100 at 62-63). Again, as the SEC pointed out in the joint submission, these are standard instructions in SEC enforcement actions, *id.* at 63-64, and they were again given in *AGF II*, in almost identical form as the SEC has requested in this case. Ex. D at 1193:20-1195:6.

Finally, Defendants have objected to the SEC's requested instruction, which is based on basic evidence law, that a prior inconsistent statement by a party can be considered as both affirmative evidence of the statement, as well as for purposes of credibility (D.E. 100 at 72-73). Once more, Defendants are wrong on the law, as the SEC showed in the joint pretrial submission, and as shown by the instructions to the Jury in *AGF II*. Ex. D at 1181:15-1182:4.

### b.   Certain of the SEC's Proposed Summary Exhibits

At the May 22, 2019 Conference, the Court directed the parties to review the Summary Exhibits and provide the Court with the parties' views as to whether the exhibits are proper

summary exhibits under Rule 1006 of the Federal Rules of Evidence, or whether they are best characterized as demonstratives.

Upon further review, the SEC maintains its position that the Summary Exhibits are proper summary exhibits under Rule 1006 of the Federal Rules of Evidence.  Rule 1006 provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writings."  Fed. R. Evid. 1006.  Summary exhibits are admissible if "(1) the underlying documents [are] admissible, even if they are never admitted; (2) the underlying documents [are] too voluminous for convenient in-court review; (3) the charts . . . accurately summarize the underlying documents; [and] (4) the summary charts and the underlying documents . . . have been made available at a reasonable time and place for inspection." *United States v. Bertoli*, 854 F. Supp. 975, 1051 (D.N.J. 1994) *aff'd in part, vacated in part* 40 F.3d 1384 (3d Cir. 1994).

As the Court is aware, the Summary Exhibits summarize certain voluminous data relating to phone records.  Exhibit 28C, for example, summarizes, from various materials, each customer's phone numbers.  Exhibit 28B, in turn, combines information from one set of voluminous exhibits (those relating to all the trades in a customer account), with information from a separate set of voluminous exhibits (those relating to all the phone records).  Exhibit 28A, finally, further summarizes the information in Exhibit 28B by providing a numerical count of the trades without calls, and providing an additional calculation—the percentage of trades without calls.

These Summary Exhibits meet the criteria for admissibility under Rule 1006.  First, as the Court has already ruled, the underlying phone records on which the Summary Exhibits are based are admissible, and there is no dispute that the underlying trade blotters are also admissible.  Second, these records, consisting of thousands of pages with thousands of entries for phone calls and trades, are too voluminous for convenient in-court review.  Third, there is no contention that any summary in the charts is an incorrect summary of the underlying data—Defendants' contention that the phone records themselves are not complete is not an argument that the Summary Exhibits inaccurately summarize the materials that were produced.  Finally, the SEC made or is making available to Defendants the documents underlying the Summary Exhibits.

Moreover, Rule 1006 permits a court to admit as evidence not just simple summaries of one set of voluminous records individually, but exhibits that consist of multiple summaries of multiple sets of voluminous records in combination.  In a similar case, the Sixth Circuit upheld the district court's admission of precisely that type of evidence—exhibits created by combining various summaries of large volumes of data to create a timeline of events.  *See United States v. Williams*, 952 F.2d 1504, 1519 (6th Cir. 1991) (describing admitted charts as "a compilation of information obtained from telephone records, limousine records, surveillances, and tape recordings of the conversations between defendant and [a witness]" and noting that "[i]n essence, the charts were a chronology of the significant events that occurred on each of those days"); *see also In re Bear Stearns Cos. Inc. Secs., Deriv. and ERISA Litig.*, 763 F. Supp. 2d 423, 582-83 (S.D.N.Y. 2011) (admitting under Rule 1006 summary exhibit that combined information about proxy statements filed by Bear Stearns, stock prices, and information from SEC forms regarding stock trading by company insiders); *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir. 1988) (proper to admit into

jury room for deliberations summary charts triangulating names of individuals, phone numbers used, and location of calls).  The Court should admit the Summary Exhibits into evidence.[2]

     *c.   Updates on Other Trial Items*

     The parties have agreed that, once pending objections to designations objections are resolved, they will create one video for the trial testimony of witnesses Bernardo, Estrada, and Weathers.  Accordingly, the Jury will not have to hear any particular part of the testimony of these witnesses more than once.  The parties propose to play the designations from the SEC's examinations first, and then play, as cross-examination, the designations from Defendants' examinations.  Moreover, the parties will create one binder of exhibits for the Jury to follow along with the deposition, and will remind the Court to instruct jurors not to flip ahead in their binders. Exhibits used during the videotaped testimony will bear a sticker for the trial exhibit number, as well as the old deposition exhibit number, necessary so that the Jury understands what exhibit the witness is referencing.  Plaintiff's trial exhibits will be marked in light green, Defendants' trial exhibits will be marked in blue, and deposition exhibit stickers will be white.

     Counsel for the SEC, as well as trial technician contractors, plan to test out the Courtroom 12C's technological capabilities on Thursday, June 6, at 11 a.m., as per this Court's instructions. On that day, the SEC will provide a new printed set of its proposed trial exhibits.

     We thank the Court for its attention to these matters.

                                          Respectfully submitted,

                                        Jorge G. Tenreiro

---

[2]     As the Court can surmise, Defendants do continue to assert an objection to the Summary Exhibits to the extent they relate to "non-testifying customers."  Indeed, Defendants have also objected to the introduction into evidence of their own admissions "with regard to non-testifying customers."  *See* Ex. A (Exhibits Nos. 233, 234).  At the May 22, 2019 hearing, the Court unequivocally rejected Defendants' arguments that evidence with respect to non-testifying customers was inadmissible, correctly noting that the lack of live testimony by a customer went to the sufficiency of the evidence as to particular claims, not the admissibility of evidence. Defendants' insistence on preserving objections as if the Court's ruling did not exist is perplexing, not to mention wasteful and distracting.  The SEC respectfully requests that the Court overrule any objections to the Summary Exhibits and Exhibits 233 and 234 that may be based on the fact that not all customers will testify at trial.