**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SECURITES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> GREGORY T. DEAN AND DONALD J. FOWLER, <br><br> Defendants. | Case No. 17-cv-139-GHW |

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR REMEDIES AGAINST DEFENDANT DONALD J. FOWLER**

---

McCORMICK & O'BRIEN, LLP
9 East 40th Street, Fourth Floor
New York, New York 10016
(212) 320-8972
*Attorneys for Defendant*

*On the Brief:*
Liam O'Brien, Esq.
Harry Delagrammatikas, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 3

I.     PERMANENT ENJOINMENT IS NOT WARRANTED .................................. 3

    A.  SEC Has Not Satisfied Its Burden to Provide Positive Proof of a Reasonable Likelihood That Past Wrongdoing Will Recur, Nor Any Imminence of Same ...................................... 5

       1.  Jury's Violation Finding and Scienter ......................................................... 5

       2.  Lack of Expressed Remorse ...................................................................... 7

       3.  Fowler's Continuing Work as a Broker ..................................................... 8

    B.  The SEC's Failure To Seek A Preliminary Injunction, And The Passage Of Time Between The Violative Conduct And Trial, Weigh Heavily Against A Permanent Injunction ...................................................................................................... 8

    C.  Equitable Considerations, Including The Resultant Adverse Impact on Mr. Fowler, Weigh Against Imposition Of A Permanent Injunction ...................................... 12

II.    THE SEC HAS IMPROPERLY BASED PROPOSED DISGORGEMENT AND PREJUDGMENT INTEREST ON CUSTOMERS, ACCOUNTS AND TRANSACTIONS WHICH WERE NOT PRESENTED OR ESTABLISHED AT TRIAL AND WHICH WERE NOT CONSIDERED BY THE JURY ......................................................................... 13

III.   MAXIMUM / THIRD-TIER CIVIL PENALTIES ARE NOT WARRANTED .............. 17

CONCLUSION ......................................................................................................... 20

# **TABLE OF AUTHORITIES**

## **Cases**

*Aaron v. Sec. and Exch. Comm'n,* 446 U.S. 680, 703 (1980) ........................................ 6

*Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 394 (2 Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973) .......................................................... 6

*Hecht Co. v. Bowles*, 321 U.S. 321, 328-330, 64 S.Ct. 587, 88 L.Ed. 754 (1944) ...................... 12

*In re Moskowitz,* 2002 WL 434524, Exchange Act Release No. 45,609, 77 SEC Docket 446 (March 21, 2002) ........................................................................................ 10

*Kokesh v. S.E.C.*, 137 S. Ct. 1635, 198 L. Ed. 2d 86 (2017) ........................................ 15

*Proffitt v. F.D.I.C.,* 200 F.3d 855, 862 (D.C.Cir. 2000) ............................................ 10

*S.E.C. v. Amerindo Inv. Advisors Inc.*, 2014 WL 2112032, at *12 (S.D.N.Y. May 6, 2014), *aff'd*, 639 F. App'x 752 (2d Cir. 2016) ...................................................................... 17

*S.E.C. v. Cavanagh*, 445 F.3d 105, 117, fn.25 (2d Cir. 2006) ...................................... 13

*S.E.C. v. Cole*, No. 12-CV-816, 2014 WL 4723306, at *6 (S.D.N.Y. Sept. 22, 2014), aff'd sub nom. *Sec. & Exch. Comm'n v. Cole*, 661 F. App'x 52 (2d Cir. 2016) ..................................... 18

*S.E.C. v. Contorinis*, 743 F.3d 296, 305 (2d Cir. 2014) ............................................ 15

*S.E.C. v. Dibella*, No. 3:04CV1342 (EBB), 2008 WL 6965807, at *13 (D. Conn. Mar. 13, 2008), *aff'd,* 587 F.3d 553 (2d Cir. 2009) ................................................................ 10, 18

*S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215, 1228 (D.C. Cir. 1989) .............................. 4, 7, 13

*S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) .............................. 14

*S.E.C. v. GTF Enterprises, Inc.*, No. 10-CV-4258 RA, 2015 WL 728159, at *5 (S.D.N.Y. Feb. 19, 2015) ............................................................................................ 18

*S.E.C. v. Ingoldsby*, No. CIV. A. 88-1001-MA, 1990 WL 120731, at *3 (D. Mass. May 15, 1990) ........................................................................................... 7, 12

*S.E.C. v. John Adams Tr. Corp.*, 697 F. Supp. 573, 577 (D. Mass. 1988) .............................. 6, 10

*S.E.C. v. Jones*, 476 F. Supp. 2d 374, 383 (S.D.N.Y. 2007) ....................................... passim

S.*E.C. v. Locke Capital Mgmt., Inc.*, 794 F. Supp. 2d 355, 370 (D.R.I. 2011) ......................... 18

*S.E.C. v. Lorin*, 76 F.3d 458, 461 (2d Cir. 1996) ................................................ 9, 13

*S.E.C. v. Netelkos*, 638 F. Supp. 503, 506 (S.D.N.Y. 1986) ........................................................ 13

*S.E.C. v. Neurotech Dev. Corp.*, No. CV 04-4667 TCP WDW, 2011 WL 1113705, at *6 (E.D.N.Y. Feb. 28, 2011), *report and recommendation adopted*, No. 04-CV-4667 TCP, 2011 WL 1099864 (E.D.N.Y. Mar. 23, 2011) ................................................................................... 19

*S.E.C. v. Wellshire Sec., Inc.*, 773 F. Supp. 569, 576 (S.D.N.Y. 1991) ..................................... 4, 5

*S.E.C. v. Wyly*, 56 F. Supp. 3d 394, 404 (S.D.N.Y. 2014) .................................................... 13, 15

*SEC v. Brown*, 643 F.Supp.2d 1088, 1093 (D.Minn. 2009) ......................................................... 18

*SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978) ............................ passim

*SEC v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395, 2011 WL 666158, at *3 (S.D.N.Y. Feb. 14, 2011) ........................................................................................................................................ 14

*SEC v. Culpepper*, 270 F.2d 241, 250 (2d Cir.1959) ..................................................................... 4

*SEC v. Geon Industries, Inc.*, 531 F.2d 39, 54-55 (2 Cir. 1976) ................................................. 12

*SEC v. Koenig*, 469 F.2d 198, 202 (2d Cir. 1972) ......................................................................... 7

*SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975) ................................ 3, 4, 5

*SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir.1972) ....................... 4, 12, 13

*SEC v. Moran*, 944 F.Supp. 286, 296-97 (S.D.N.Y.1996) .......................................................... 17

*SEC v. Opulentica*, 479 F.Supp.2d 319, 331 (S.D.N.Y.2007) ..................................................... 17

*SEC v. Parklane Hosiery Co., Inc.*, 558 F.2d 1083, 1089 (2d Cir. 1977) ...................................... 3

*SEC v. Patel*, 61 F.3d 137, 141-42 (2d Cir. 1995) ................................................................... 8, 13

*SEC v. Rabinovich & Assocs., LP*, No. 07 Civ. 10547(GEL), 2008 WL 4937360, at *6 (S.D.N.Y. Nov. 18, 2008) .......................................................................................................................... 18

*SEC v. Roor*, No. 99 Civ. 3372, 2004 WL 1933578, at *10–*11 (S.D.N.Y. Aug.30, 2004) ....... 19

*SEC v. Save The World Air, Inc.*, No. 01 Civ. 11586, 2005 WL 3077514, at *20 (S.D.N.Y. Nov. 15, 2005) ........................................................................................................................................ 19

*SEC v. Savoy Indus.*, 587 F.2d 1149, 1168 (D.C.Cir. 1978) ........................................................ 7

*SEC v. Universal Major Industries Corp.*, 546 F.2d 1044, 1048 (2d Cir.1976), *cert. denied*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977) ........................................................................... 9

*Sec. & Exch. Comm'n v. Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir. 1977) .................. 3, 4, 5, 6

*Sec. & Exch. Comm'n v. Berkey*, 374 F. Supp. 3d 355, 358-59 (S.D.N.Y. 2019) ........................ 15

*Sec. & Exch. Comm'n v. Hasho*, 784 F. Supp. 1059, 1105, 1111–12 (S.D.N.Y. 1992) .............. 15

*Sec. & Exch. Comm'n v. Keller Indus., Inc.*, 342 F. Supp. 654, 660 (S.D.N.Y. 1972)........... 11, 12

*Sec. & Exch. Comm'n v. Nadel*, 206 F. Supp. 3d 782, 785–86 (E.D.N.Y. 2016) ........................ 15

*Sec. & Exch. Comm'n v. Riel*, 282 F. Supp. 499, 529 (N.D.N.Y. 2017)........................... 18, 19

*Sec. and Exch. Comm'n v. Dimensional Entertainment Corp.,* 493 F.Supp. 1270, 1278 (S.D.N.Y. 1980) ............................................................................................................................... 6, 7

*Sec. and Exch. Comm'n v. Lund,* 570 F.Supp. 1397, 1404 (C.D.Cal. 1983) .................................. 7

*Sec. and Exch. Comm'n v. Nat'l Student Mktg Corp.,* 457 F.Supp. 682, 717 n. 75 (D.D.C. 1978) 8

*U.S. S.E.C. v. Boey*, No. 07-CV-39-SM, 2013 WL 3805127, at *3 (D.N.H. July 22, 2013) ....... 11

*U.S. S.E.C. v. Quan*, No. CIV. 11-723 ADM/JSM, 2014 WL 4670923, at *14 (D. Minn. Sept. 19, 2014) ........................................................................................................................................... 15

*United States Sec. & Exch. Comm'n v. Garfield Taylor, Inc.*, 134 F. Supp. 3d 107, 110 (D.D.C. 2015) ........................................................................................................................................... 18

*United States Sec. & Exch. Comm'n v. Wey*, 246 F. Supp. 3d 894, 935 (S.D.N.Y. 2017) ..... 3, 4, 6

*United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953)... 4

## **Statutes**

15 U.S.C. § 77t(d) ................................................................................................................................ 17

15 U.S.C. § 78u(d)(3) ......................................................................................................................... 17

15 U.S.C. § 80a-9(a)(2)........................................................................................................................ 12

15 U.S.C. § 80b-3(e)(4) ....................................................................................................................... 12

TO THE HONORABLE GREGORY H. WOODS
UNITED STATES DISTRICT JUDGE:

Defendant Donald J. Fowler ("Fowler") submits this memorandum of law in opposition to motion for imposition of remedies submitted by plaintiff Securities and Exchange Commission ("Plaintiff" or "SEC").  (ECF 189).  For the reasons set forth below, it is respectfully submitted that the SEC's request for the imposition of a permanent injunction, disgorgement and civil penalties should be denied to the extent proposed herein.

## PRELIMINARY STATEMENT

This matter concerns the SEC's contention, and the jury's recent determination, that defendant Fowler violated securities laws by engaging in a course of conduct whereby he: recommended and implemented high cost, high frequency trading for fourteen specific customers with no reasonable basis to believe it would be suitable; made material misrepresentations and omissions to those specific customers about the prohibitive costs of his trading and the chances of making a profit; and made unauthorized trades in thirteen specific customer accounts.  (ECF 169, Verdict Sheet).

On June 28, 2019, the SEC filed a motion seeking the imposition of the following remedies against Fowler: a permanent injunction; disgorgement in the amount of $315,492.70 plus $75,589.49 in interest; and the imposition of a third-tier civil penalty of at least $900,000. (ECF 189, ECF 191 at pg.19).

As addressed in detail in Point I below, it is respectfully submitted that permanent enjoinment of Mr. Fowler is not warranted or necessary under the circumstances of this matter based on each of the following: (a) the totality of the circumstances do not support the conclusion that it is reasonably likely that any past wrongdoing will recur without an injunction; (b) the SEC has failed to satisfy its burden to provide positive proof of a reasonable likelihood

1

that past wrongdoing will recur, or that there is any imminence of same; (c) the SEC's decision not to seek a preliminary injunction or administrative relief for a period of five years while it was investigating Mr. Fowler and then litigating this enforcement action, while fully aware that Mr. Fowler continued to work as a broker, weighs heavily against the need for a permanent injunction; and (d) equitable considerations weigh against the imposition of a permanent injunction in this matter.

As addressed in Point II below, the SEC has improperly based its proposed disgorgement and prejudgment interest figures on customers, accounts and transactions which were not presented or established at trial, and which were not considered by the jury.  It is well-settled that alleged unlawful gains which are properly subject to disgorgement as a result of a securities violation must be causally connected to the violation.  Here, the SEC's evidentiary focus and specific violation claims at trial concerned: whether Mr. Fowler recommended and implemented high cost, high frequency trading for fourteen specific customers with no reasonable basis to believe it would be suitable; whether Fowler made material misrepresentations and omissions to those specific customers about the prohibitive costs of his trading and the chances of making a profit; and whether he made unauthorized trades in thirteen specific customer accounts. However, the SEC's disgorgement calculation includes twelve additional customers about whom evidence was not presented at trial.  Simply stated, there has been no determination that Mr. Fowler committed securities violations with respect to those twelve additional customers.  The SEC's calculation is therefore impermissibly overboard, and well exceeds the bounds of due process.   When the improperly-included twelve customers are excluded from the SEC disgorgement calculation, the disgorgement amount totals $116,181.50, and consequently, the prejudgment interest figure  is substantially lower than the amount calculated by the SEC.

As addressed in Point III below, with respect to the imposition of civil penalties, where, as here, a defendant has violated a number of securities laws in carrying out a single scheme, courts generally have imposed a single violation penalty.  In addition, the SEC's proposed penalty is excessive given the amount subject to disgorgement.  Accordingly, in light of the SEC allegations and jury finding that Mr. Fowler violated a number of securities laws in carrying out a single scheme, and given the disgorgement amount of $116,181.50, a single-violation penalty of $150,000 is more appropriate than the per-statute penalty requested by the SEC.

## ARGUMENT

### I.    PERMANENT ENJOINMENT IS NOT WARRANTED

After establishing a violation of federal securities laws, the SEC may obtain a permanent injunction against future violations if the defendant has engaged in past violations and there is a reasonable likelihood of future violations. See generally *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978).  Indeed, as noted by this Court, "to seek an injunction in the Second Circuit, the SEC must go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence."  *United States Sec. & Exch. Comm'n v. Wey*, 246 F. Supp. 3d 894, 935 (S.D.N.Y. 2017) citing *S.E.C. v. Jones*, 476 F. Supp. 2d 374, 383 (S.D.N.Y. 2007) and *SEC v. Commonwealth Chem. Sec., Inc.*, *supra*.

The Court of Appeals has repeatedly observed that "[i]t is well settled that the [SEC] cannot obtain [permanent injunctive] relief without positive proof of a reasonable likelihood that past wrongdoing will recur."  *Sec. & Exch. Comm'n v. Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir. 1977)(affirming denial of permanent injunction in securities violations matter – "there is no per se rule requiring the issuance of an injunction upon the showing of a past violation"), citing *SEC v. Parklane Hosiery Co., Inc.*, 558 F.2d 1083, 1089 (2d Cir. 1977) and *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975)(stating that "[i]llegal activity, without more,

3

does not automatically justify the issuance of an injunction").  See also *SEC v. Commonwealth Chem. Sec., Inc.*, *supra*. (the SEC "cannot obtain relief without positive proof of a reasonable likelihood that past wrong-doing will recur"); *SEC v. Culpepper,* 270 F.2d 241, 250 (2d Cir.1959)("the moving party must satisfy the court that relief is needed [and] that there exists some cognizable danger of recurrent violation").

The determination of whether a defendant is likely to repeat a wrong depends on the "totality of the circumstances", *Sec. & Exch. Comm'n v. Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir. 1977) quoting *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975), and "is almost always a fact-specific inquiry".  *United States Sec. & Exch. Comm'n v. Wey*, *supra*. See also *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215, 1228 (D.C. Cir. 1989)("No single factor is determinative; instead, the district court should determine the propensity for future violations based on the totality of circumstances") citing *SEC v. Bausch & Lomb, Inc*.

"The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated", *S.E.C. v. Wellshire Sec., Inc.*, 773 F. Supp. 569, 576 (S.D.N.Y. 1991) quoting *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir.1972), and "[t]he burden rests with the SEC to establish the likelihood of future violations."  *S.E.C. v. Wellshire Sec., Inc., supra.*  As the Supreme Court stated with respect to injunctions, "the moving party must satisfy the court that relief is needed.  The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility".  *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953).

The SEC contends that a permanent injunction is warranted against Fowler based on the following: the jury's finding that Fowler violated the Exchange Act and Securities Act and the

4

scienter relevant to those findings; the repetitive nature of the complained-of conduct from 2011 to 2014; the failure to accept responsibility or express remorse; and, Fowler's continuing work as a broker.  (ECF 191, SEC Brief at pgs. 3-12).

### A. SEC Has Not Satisfied Its Burden to Provide Positive Proof of a Reasonable Likelihood That Past Wrongdoing Will Recur, Nor Any Imminence of Same

It is respectfully submitted that SEC has not satisfied its burden to proffer "positive proof of a reasonable likelihood that any past wrongdoing will recur", as required for an injunction pursuant to *Sec. & Exch. Comm'n v. Bausch & Lomb Inc.* and *SEC v. Commonwealth Chem. Sec., Inc*.  Rather than proffering specific positive proof that Mr. Fowler is likely to engage in future violations, the SEC's injunction request rests on a rote summarization of the fact of the jury's violation finding, the scienter relevant thereto, the lack of expressed remorse, and the fact that Mr. Fowler is still working as a broker.  These factors, alone, do not warrant the imposition of a permanent injunction under the circumstances of this matter.

It is respectfully submitted that the totality of the circumstances do not support the conclusion that it is reasonably likely that any past wrongdoing will recur without an injunction. Accordingly, the imposition of a permanent injunction against Mr. Fowler is not warranted.

### 1. Jury's Violation Finding and Scienter

While the SEC focuses heavily on the existence of the jury's violation determination in this matter as justification for an injunction, the existence of a violation does not itself warrant or justify the imposition of an injunction.  See *S.E.C. v. Wellshire Sec., Inc.*, 773 F. Supp. 569, 576 (S.D.N.Y. 1991)(stating that violation of the securities laws "does not assure [that] injunctive relief shall be granted", and rejecting SEC's "claims that the existence of past violations provides an inference that there will be future violations"); *SEC v. Management Dynamics, Inc.*, 515 F.2d

801, 807 (2d Cir. 1975)("Illegal activity, without more, does not automatically justify the issuance of an injunction").

As noted above, the Second Circuit has made clear that the SEC "must go beyond the mere facts of past violations" and must provide "positive proof" of a realistic likelihood of recurrence.  *United States Sec. & Exch. Comm'n v. Wey,* 246 F. Supp. 3d at 935; *SEC v. Commonwealth Chem. Sec., Inc*., 574 F.2d at 98-100 ("Except for the case where the SEC steps in to prevent an ongoing violation, [the language of the Exchange Act and Securities Act] seems to require a finding of "likelihood" or "propensity" to engage in future violations") citing *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 394 (2 Cir.) (sustaining denial of injunction), cert. denied, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973).

Indeed, "[r]ecognition that an injunction is a drastic remedy, not a mild prophylactic, has led courts to require not only positive proof of a realistic likelihood that past wrongdoing will recur, but also a demonstration that recurring violations are a relatively imminent threat".  *S.E.C. v. John Adams Tr. Corp.*, 697 F. Supp. 573, 577 (D. Mass. 1988)(internal citations and quotation marks omitted), quoting *Aaron v. Sec. and Exch. Comm'n,* 446 U.S. 680, 703 (1980), *Sec. and Exch. Comm'n v. Bausch & Lomb, Inc.,* 565 F.2d at 18, and *Sec. and Exch. Comm'n v. Dimensional Entertainment Corp.,* 493 F.Supp. 1270, 1278 (S.D.N.Y. 1980).

Here, in focusing primarily on the existence of the jury's violation finding and included scienter determination, the SEC has failed to 'go beyond the mere facts of past violations' and has failed to provide affirmative or "positive proof" of a realistic likelihood of recurrence.  See *S.E.C. v. Jones,* 476 F. Supp. 2d at 383-84 (stating that, "[w]ith respect to recurrence, the Second Circuit demands that the Commission go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence", and holding that the SEC's "exclusive reliance

on Defendants' past conduct is insufficient to demonstrate the need for a permanent injunction in this case").   See also *SEC v. Commonwealth Chem. Sec., Inc*., 574 F.2d at 101 (abuse of discretion for trial court to conclude that SEC established likelihood of recurrence with respect to two defendants where there was no evidence submitted of prior or subsequent violations).   The SEC has also failed to demonstrate that recurring violations by Mr. Fowler are a 'relatively imminent threat'.   *Sec. & Exch. Comm'n v. Dimensional Entm't Corp.*, 493 F. Supp. at 1278-79.

### 2.   <u>Lack of Expressed Remorse</u>

Similarly, the lack of expressed remorse *vis a vis* Fowler's vigorous defense against the SEC's enforcement action does not warrant an injunction.   "The securities laws do not require defendants to behave like Uriah Heep in order to avoid injunctions.   They are not to be punished because they vigorously contest the government's accusations."   *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215, 1229 (D.C. Cir. 1989)(holding that district court improperly relied on defendant's purported lack of remorse in making injunction determination, and stating that "lack of remorse is relevant only where defendants have previously violated court orders or otherwise indicate that they did not feel bound by the law")(internal citations omitted) citing *SEC v. Koenig,* 469 F.2d 198, 202 (2d Cir. 1972) and *SEC v. Savoy Indus.,* 587 F.2d 1149, 1168 (D.C.Cir. 1978).   See also *S.E.C. v. Ingoldsby*, No. CIV. A. 88-1001-MA, 1990 WL 120731, at *3 (D. Mass. May 15, 1990)("While the defendant has not publicly acknowledged the wrongfulness of his conduct, I find that this is not evidence of a propensity within Ingoldsby to commit future violations. Absent a showing of bad faith, the defendant should not be prejudiced for presenting a vigorous defense and requiring the SEC to meet its proper evidentiary burden both at trial and at the injunctive relief stage of the judicial proceedings")(internal citations omitted) citing *Sec. and Exch. Comm'n v. Lund,* 570 F.Supp. 1397, 1404 (C.D.Cal. 1983); *First City Fin. Corp.,* 890 F.2d

at 1229; *Sec. and Exch. Comm'n v. Nat'l Student Mktg Corp.,* 457 F.Supp. 682, 717 n. 75 (D.D.C. 1978).

### 3.   Fowler's Continuing Work as a Broker

The SEC also submits a cursory and conclusory argument that Mr. Fowler's ongoing employment as a broker "puts him in a position to engage in further fraudulent conduct and warrants permanent injunctive relief".   (ECF 191, SEC Brief at pgs. 11-12).   However, as discussed above, a determination in this action that Fowler committed securities violations does not in and of itself warrant or require the conclusion that his continuing work as a broker will result in future violations.   See generally *SEC v. Patel,* 61 F.3d 137, 141-42 (2d Cir. 1995)(district court's finding that defendant 'used his position to engage in misconduct' "can in no way justify the prediction that future misconduct will occur", and noting that "[t]he loss of livelihood and the stigma attached to permanent exclusion … certainly requires more").

This is especially so where the violative activity at issue took place between 2011 and 2014, and Mr. Fowler has continued to work as a broker during the last five years without restriction or subsequent violation findings.

### B.   The SEC's Failure To Seek A Preliminary Injunction, And The Passage Of Time Between The Violative Conduct And Trial, Weigh Heavily Against A Permanent Injunction

It is respectfully submitted that the SEC's determination that a preliminary injunctive relief was not necessary with respect to Mr. Fowler from 2014 to the present – a period of five years – weighs heavily against the need for a permanent injunction.

The SEC's investigation of J.D. Nicholas began in early 2014, while Fowler was associated with and employed at J.D. Nicholas, and Fowler gave investigative testimony in November 2014.  (ECF 70, SEC Rule 56.1 Statement, ¶ 137)  The SEC also obtained tolling agreements from Fowler in March 2016 and August 2016.  (ECF 190-24 and 190-25, SEC

Exhibits X and Y).  The SEC thereafter filed this enforcement action on January 9, 2017.  (ECF 1, Complaint).

However, while liberally employing a host of inflammatory and damning language to describe Mr. Fowler's activities as a broker during the period between 2011 and 2014[1] and fervently requesting the need for a permanent injunction, the SEC does not attempt to address why it never sought preliminary injunctive or administrative relief during the past five years.  It is curious, if not undeniably telling, that the SEC did not deem it appropriate or necessary to do so while fully cognizant that Mr. Fowler was continuing to work as a broker.  Certainly, the SEC had the power, resources and discretion to seek preliminary enjoinment against Fowler either administratively or in this enforcement action.  The SEC clearly decided that enjoinment was not necessary; that is, the SEC necessarily determined that there was no need to even attempt to protect the public from Mr. Fowler.

It is respectfully submitted that the SEC's determination that a preliminary injunction or administrative action was not necessary during the last five years weighs heavily against permanent enjoinment at this juncture.  The Second Circuit has made clear that "a district court may properly consider the amount of time between the violations and the trial in deciding whether to issue an injunction".  *S.E.C. v. Lorin*, 76 F.3d 458, 461 (2d Cir. 1996)(noting that interval between time of violations and time of trial is "one factor among several to be weighed" by the court) citing *SEC v. Universal Major Industries Corp.,* 546 F.2d 1044, 1048 (2d Cir.1976), *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977).

---

[1]  For example, stating that Mr. Fowler: "brazenly defrauded" and "lured" customers, ending with "catastrophic losses"; that he "brashly lied"; that he engaged in a "brazen level of senseless, one-size fits all trading".  (ECF 191, SEC Brief, pgs. 1, 2, 7).

This Court has recognized that when weighing the imposition of an injunction, the passage of time between alleged misconduct and an SEC injunction application undercuts a claim that a defendant poses a risk to the public.  See *S.E.C. v. Jones*, 476 F. Supp. 2d 374, 384-85 (S.D.N.Y. 2007)("The Court also notes that several years have passed since Defendants' alleged misconduct apparently without incident.  This fact further undercuts the Commission's assertion that Defendants pose a continuing risk to the public").  See also *S.E.C. v. Dibella*, No. 3:04CV1342 (EBB), 2008 WL 6965807, at *13 (D. Conn. Mar. 13, 2008), *aff'd,* 587 F.3d 553 (2d Cir. 2009)(denying permanent injunction and noting that passage of years without violation "weighs heavily against an injunction"); *In re Moskowitz,* 2002 WL 434524, Exchange Act Release No. 45,609, 77 SEC Docket 446 (March 21, 2002)(explaining that after six years, "[t]he passage of time since [Defendant's] violative conduct militates against the issuance of a cease-and-desist order"); *Proffitt v. F.D.I.C.,* 200 F.3d 855, 862 (D.C.Cir. 2000)(stating that while a serious offense, even long past, may indicate a defendant's current risk to the public, that offense cannot alone determine fitness years later).

As noted in *S.E.C. v. John Adams Tr. Corp.*, *supra*, where the district court denied a permanent injunction in part because of the SEC's unhurried approach in seeking an injunction or pursuing administrative remedies:

> The appropriateness of equitable relief in this case must also be considered within the full context of the SEC's regulatory authority.  Without deprecating the role played by SEC injunctions in the enforcement of the securities laws, one may question the need for a permanent injunction in a case such as this where the Commission took a leisurely approach to the application of its own administrative powers to preclude further wrongdoing by JAT.
>
> […]
>
> With the passage of time—ten months to the day after the receiver terminated operations of JAT and some four months after the hearing on the permanent injunction—the Commission finally got

around to finding that JAT was no longer conducting an investment adviser business and cancelled its registration. In evaluating the equities, a court may properly look to the diligence with which the party seeking the court's assistance has pursued remedies uniquely at its own disposal. Here the Commission, which on the best view of the matter must have concluded that JAT was out of business and consequently did not as a practical matter require a rush cancellation, chose not to press its § 80b–3 remedy with any particular vigor or expedition. Nothing in the Commission's pedestrian treatment of JAT's registration suggests that extraordinary equitable relief by injunctive action is necessary from this Court.

[697 F. Supp. At 578].

See also *Sec. & Exch. Comm'n v. Keller Indus., Inc.*, 342 F. Supp. 654, 660 (S.D.N.Y. 1972)(in denying SEC motion for preliminary injunction, noting that, "[n]or is there urgent need for the relief sought, as shown by the fact that the SEC did not seek a temporary restraining order, brought the action six months after its own hearings had been terminated, and filed this motion six months thereafter"); *U.S. S.E.C. v. Boey*, No. 07-CV-39-SM, 2013 WL 3805127, at *3 (D.N.H. July 22, 2013)(denying injunction – "Because a permanent injunction is a severe remedy, the SEC carries a heavy burden to justify its imposition. … [T]he SEC here has not shown any realistic likelihood that Boey will commit similar violations in the future. Twelve years have passed since Boey's fraudulent conduct, and the SEC does not argue that he has engaged in any additional illegal conduct").

Here, although possessed of the ability, resources and discretion to seek a preliminary injunction or administrative relief against Mr. Fowler since 2014, and fully aware that Mr. Fowler has continued to work with the public as a broker during the past five years and to the present, the SEC determined that an injunction was not necessary and that the public did not need protection from Mr. Fowler. It is respectfully submitted that these undisputed circumstances weigh heavily against imposition of a permanent injunction.

## C. Equitable Considerations, Including The Resultant Adverse Impact on Mr. Fowler, Weigh Against Imposition Of A Permanent Injunction

"[E]ven assuming *arguendo* that there is a "cognizable danger of recurrent violation," that condition does not alone suffice to authorize an injunction.  [The Court] must still weigh those principles of fairness and justice that have always been the concern of equity courts.  The adverse effect of an injunction upon the defendants is also a factor to be considered." *Sec. & Exch. Comm'n v. Keller Indus., Inc.*, 342 F. Supp. 654, 660 (S.D.N.Y. 1972)(internal citations omitted) citing *Hecht Co. v. Bowles*, 321 U.S. 321, 328-330, 64 S.Ct. 587, 88 L.Ed. 754 (1944); *SEC v. Harwyn Industries Corp.*, 326 F.Supp. 943 (S.D.N.Y. 1971).   See also *S.E.C. v. Ingoldsby*, No. CIV. A. 88-1001-MA, 1990 WL 120731, at *1–2 (D. Mass. May 15, 1990)("general equitable concerns such as the resultant adverse impact upon the defendant's professional reputation and business activity may also be considered" in assessing necessity of an injunction) citing *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1102 (2d Cir. 1972).

This Court has recognized that in light of the "collateral consequences" of a permanent injunction, "an injunction preventing future violations of the securities laws can be more punitive than remedial." *S.E.C. v. Jones*, 476 F. Supp. 2d at 384-85.  See *Commonwealth,* 574 F.2d at 99.  Indeed, "in many securities cases, the potential collateral consequences of a permanent injunction are quite serious"; the practical effect being to "stigmatize" the defendant and "significantly impair [his] ability to pursue a career". *S.E.C. v. Jones*, *supra*.  In fact, a permanent injunction would provide authority for the Commission to seek to permanently bar Mr. Fowler from the investment advisor industry.  *Id*.  See e.g. 15 U.S.C. § 80a-9(a)(2); 15 U.S.C. § 80b-3(e)(4), (f).  See also *Sec. & Exch. Comm'n v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 98-100 (2d Cir. 1978)("In some cases the collateral consequences of an injunction can be very grave") citing *SEC v. Geon Industries, Inc.*, 531 F.2d 39, 54-55 (2 Cir. 1976).

It is respectfully submitted that consideration of the adverse collateral consequences of a permanent injunction on Mr. Fowler weigh against imposition in this matter.

## II.   THE SEC HAS IMPROPERLY BASED PROPOSED DISGORGEMENT AND PREJUDGMENT INTEREST ON CUSTOMERS, ACCOUNTS AND TRANSACTIONS WHICH WERE NOT PRESENTED OR ESTABLISHED AT TRIAL AND WHICH WERE NOT CONSIDERED BY THE JURY

"Pursuant to its equitable powers, this Court may order these defendants to disgorge their ill-gotten gains." *S.E.C. v. Netelkos*, 638 F. Supp. 503, 506 (S.D.N.Y. 1986) citing *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103-06 (2d Cir.1972). "The decision to order disgorgement of ill-gotten gains, and the calculation of those gains, lie within the discretion of the trial court." *S.E.C. v. Lorin*, 76 F.3d 458, 461–62 (2d Cir. 1996) citing *SEC v. Patel,* 61 F.3d 137, 140 (2d Cir.1995).

"[B]ecause disgorgement is not punitive, the securities violations and the allegedly unlawful gains must be causally connected." *S.E.C. v. Wyly*, 56 F. Supp. 3d 394, 404 (S.D.N.Y. 2014) citing *SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1231 (D.C.Cir.1989)("Since disgorgement primarily serves to prevent unjust enrichment, the court may exercise its equitable power only over property that is causally related to the wrongdoing.  The remedy may well be a key to the SEC's efforts to deter others from violating the securities laws, but disgorgement may not be used punitively") citing *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d at 1104.  The SEC carries the burden of establishing a proper disgorgement amount where a violation has been found.  See generally *S.E.C. v. Jones*, 476 F. Supp. 2d 374, 386 (S.D.N.Y. 2007)(denying disgorgement based on SEC's failure to establish amount).  Importantly, because disgorgement is remedial and not punitive, a court cannot order disgorgement above the amount wrongfully acquired.  See *S.E.C. v. Cavanagh*, 445 F.3d 105, 117, fn.25 (2d Cir. 2006).

The Court also has discretion to order payment of prejudgment interest on any disgorged amounts.  Requiring the payment of interest prevents a defendant from obtaining the benefit of "what amounts to an interest free loan procured as a result of illegal activity."  *SEC v. Credit Bancorp, Ltd.,* No. 99 Civ. 11395, 2011 WL 666158, at *3 (S.D.N.Y. Feb. 14, 2011).  "In deciding whether an award of prejudgment interest is warranted, a court should [take into account] ... considerations of fairness and the relative equities of the award, [ ] the remedial purpose of the statute involved, and/or [ ] such other general principles as are deemed relevant by the court."  *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)(internal quotations omitted).

Here, the SEC seeks disgorgement of Fowler's commissions in the amount of $315,492.70, and prejudgment interest of $75,589.49.  However, the disgorgement calculation includes commissions that Mr. Fowler received with respect to transactions involving twelve customer accounts that were not presented nor established at trial and which were not considered by the jury.[2]  This being so, the SEC is improperly seeking disgorgement related to customers, accounts and transactions for which the jury did not determine that Mr. Fowler committed any violations.

Mr. Fowler had many other customers from 2011 to 2014 aside from the fourteen whose accounts and transactions were presented at trial, and aside from the twelve additional 'non-trial' customers which the SEC has improperly included in its disgorgement calculation.  This is not a situation where the jury's violation findings regarding the specific customers presented at trial

---

[2]  The SEC's disgorgement calculation is contained in its Exhibit BB (ECF 190-28). Specifically, no evidence was presented to or considered by the jury with respect to any wrongdoing by Fowler with respect to the twelve customers identified in the following numbered lines of SEC Exhibit BB: 4-7, 13, 14, 21, 27, 31-33, 35.

can be properly imputed or extended to some other number of customers and transactions for which there has been no violation determination by the trier of fact.

Notably, the cases cited by the SEC in support of its improper request do not in any way involve such post-trial imputation of a violation to customers, accounts or transactions that were not presented at trial.  See *Sec. & Exch. Comm'n v. Hasho*, 784 F. Supp. 1059, 1105, 1111–12 (S.D.N.Y. 1992)(where disgorgement was limited to commissions earned from customer witnesses with respect to whom evidence was produced as trial); *Sec. & Exch. Comm'n v. Nadel*, 206 F. Supp. 3d 782, 785–86 (E.D.N.Y. 2016)(where defendants objected to inclusion of commissions earned on losing or unprofitable trades and not offsetting the proposed disgorgement by amounts that the defendants lost on trades); *Sec. & Exch. Comm'n v. Berkey*, 374 F. Supp. 3d 355, 358-59 (S.D.N.Y. 2019)(involving a consent judgment pursuant to which the allegations of the complaint were deemed to be true; defendant did not contest the proposed disgorgement amount, which related to specific customer accounts with which the defendant was involved; rather, defendant objected to disgorgement generally based on the argument that it was precluded by *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 198 L. Ed. 2d 86 (2017)).

It is well-settled that alleged unlawful gains which are properly subject to disgorgement as a result of a securities violation must be 'causally connected to the violation'.  *S.E.C. v. Wyly*, 56 F. Supp. 3d at 404 (rejecting SEC's overboard disgorgement calculation); *S.E.C. v. Contorinis*, 743 F.3d 296, 305 (2d Cir. 2014)(disgorgement amount needs "be a reasonable approximation of profits causally connected to the violation"); *U.S. S.E.C. v. Quan*, No. CIV. 11-723 ADM/JSM, 2014 WL 4670923, at *14 (D. Minn. Sept. 19, 2014), *amended*, No. CIV. 11-723 ADM/JSM, 2014 WL 6982914 (D. Minn. Dec. 10, 2014), *aff'd*, 817 F.3d 583 (8th Cir. 2016), and *aff'd*, 817 F.3d 583 (8th Cir. 2016)(where "SEC's evidentiary focus at trial was on

Defendants' involvement with PAC Funding", SEC's inclusion of fees predating defendants' involvement with PAC Funding in disgorgement amount was improper "and should be subtracted from the disgorgement amount").

Here, the jury did not find Mr. Fowler committed violations with respect to the twelve additional customers whom the SEC now attempts to include.  The SEC's evidentiary focus and specific violation claims at trial concerned: whether Mr. Fowler recommended and implemented high cost, high frequency trading for fourteen specific customers with no reasonable basis to believe it would be suitable; whether Fowler made material misrepresentations and omissions to those specific customers about the prohibitive costs of his trading and the chances of making a profit; and whether he made unauthorized trades in thirteen specific customer accounts.  The jury found that he did, though it also determined that there was no unauthorized trading in customer Clay B. Miller's account.  [ECF 169, Verdict Sheet, ¶ 7].

Simply stated, there has been no determination that Mr. Fowler committed securities violations with respect to the twelve additional customers identified in SEC Exhibit BB at line numbers 4-7, 13, 14, 21, 27, 31-33 and 35.  This being so, the SEC's approach impermissibly stretches the bounds of proper disgorgement, and well exceeds the bounds of due process.

When the twelve non-trial customers are excluded from the SEC disgorgement calculation, the disgorgement amount totals $116,181.50[3], and the prejudgment interest figure would consequently be substantially lower than the amount calculated by the SEC.

Accordingly, it is respectfully submitted that the SEC's proposed disgorgement and prejudgment interest figures are improper, impermissibly broad, and must be reduced to reflect

---

[3]  See Summary of Disgorgement Calculations, attached as Exhibit A to the Declaration of Liam O'Brien in Opposition to the SEC's Motion for Remedies.

the commissions and fees earned by Fowler that are causally related to the violations which the jury actually found.

### III.   MAXIMUM / THIRD-TIER CIVIL PENALTIES ARE NOT WARRANTED

The Securities Act and the Exchange Act authorize three tiers of civil penalties.  *See* 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3).  If a violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons", a court may impose what are termed "Tier III" penalties, or fines up to the higher of (1) $150,000 for each violation by a natural person, or (2) the defendant's "gross amount of pecuniary gain."  15 U.S.C. 78u(d)(3)(B)(iii) (as adjusted by 17 C.F.R. § 201.1001(a) and utilizing using the pre-March 2013 penalty amount of $150,000).

"Beyond setting maximum penalties, the statutes leave the actual amount of the penalty ... up to the discretion of the district court."  *S.E.C. v. Amerindo Inv. Advisors Inc.*, 2014 WL 2112032, at *12 (S.D.N.Y. May 6, 2014), *aff'd*, 639 F. App'x 752 (2d Cir. 2016).  "[T]he civil penalty framework is of a 'discretionary nature' and each case 'has its own particular facts and circumstances which determine the appropriate penalty to be imposed.' "  *SEC v. Opulentica,* 479 F.Supp.2d 319, 331 (S.D.N.Y.2007) quoting *SEC v. Moran,* 944 F.Supp. 286, 296-97 (S.D.N.Y.1996).

Here, the SEC has requested that the Court impose a maximum third-tier penalty of $150,000 for each of the six violations found by the jury, totaling $900,000.  (ECF 191, SEC Brief at pg. 19).  Defendant respectfully submits that contrary to the SEC's proposal, where, as here, a defendant "has violated a number of securities laws in carrying out a single scheme, courts generally have imposed a single penalty"  S.*E.C. v. Locke Capital Mgmt., Inc.*, 794 F.

Supp. 2d 355, 370 (D.R.I. 2011).   See *SEC v. Rabinovich & Assocs., LP,* No. 07 Civ. 10547(GEL), 2008 WL 4937360, at *6 (S.D.N.Y. Nov. 18, 2008)(assessing civil penalty equivalent to one violation where defendant's conduct was part of single scheme or plan – "Although Lovaglio engaged in repeated violations of the securities laws, they all arose from a single scheme or plan.   A [single three-tier violation penalty] is therefore appropriate in this case"); *S.E.C. v. GTF Enterprises, Inc.*, No. 10-CV-4258 RA, 2015 WL 728159, at *5 (S.D.N.Y. Feb. 19, 2015)(imposing "a single penalty against each Defendant for the entirety of the scheme"); *United States Sec. & Exch. Comm'n v. Garfield Taylor, Inc.*, 134 F. Supp. 3d 107, 110 (D.D.C. 2015)("Because the violations here similarly arose out of a single scheme or plan, for purposes of this case the Court will apply a single monetary penalty and will assess the maximum tier three penalty"); *Sec. & Exch. Comm'n v. Riel*, 282 F. Supp. 3d 499, 529 (N.D.N.Y. 2017)("Since the violations here arose out of a single scheme or plan, for purposes of this case the Court will apply a single monetary penalty"); *SEC v. Brown,* 643 F.Supp.2d 1088, 1093 (D.Minn. 2009) (imposing a single penalty where defendant violated three statutes during a single course of conduct).

Defendant further respectfully submits that the SEC's proposed penalty is excessive given the amount subject to disgorgement as a result of the violations found by the jury, that is, $116,181.50.  See *S.E.C. v. Cole*, No. 12-CV-816, 2014 WL 4723306, at *6 (S.D.N.Y. Sept. 22, 2014), aff'd sub nom. *Sec. & Exch. Comm'n v. Cole*, 661 F. App'x 52 (2d Cir. 2016)(disgorgement amount "is a helpful starting point to calculate" civil penalty); *S.E.C. v. GTF Enterprises, Inc.,* No. 10-CV-4258 RA, 2015 WL 728159, at *2 (S.D.N.Y. Feb. 19, 2015)("disgorgement amount is a "helpful starting point").  See, e.g. *S.E.C. v. Dibella*, No. 3:04CV1342 (EBB), 2008 WL 6965807, at *1 (D. Conn. Mar. 13, 2008), *aff'd,* 587 F.3d 553 (2d

Cir. 2009)(assessing disgorgement, prejudgment interest and a third-tier penalty against defendant in the respective amounts of $374,500, $307,127.45 and $110,000); *SEC v. Save The World Air, Inc.,* No. 01 Civ. 11586, 2005 WL 3077514, at *20 (S.D.N.Y. Nov. 15, 2005)(imposing $7.5 million disgorgement amount and third-tier civil penalty of $100,000); *S.E.C. v. Neurotech Dev. Corp.*, No. CV 04-4667 TCP WDW, 2011 WL 1113705, at *6 (E.D.N.Y. Feb. 28, 2011), *report and recommendation adopted*, No. 04-CV-4667 TCP, 2011 WL 1099864 (E.D.N.Y. Mar. 23, 2011)(assessing disgorgement, prejudgment interest and a third-tier penalty as to one defendant in the respective amounts of $131,414.00, $32,017.42 and $10,000.00, and assessing disgorgement, prejudgment interest and a third-tier penalty as to the other defendant in the respective amounts of $57,129.73, $79,846.92 and $5,000.00); *SEC v. Roor,* No. 99 Civ. 3372, 2004 WL 1933578, at *10–*11 (S.D.N.Y. Aug.30, 2004)(third-tier penalty of $100,000 for a defendant ordered to disgorge $1 million); *Sec. & Exch. Comm'n v. Riel*, 282 F. Supp. 3d 499 (N.D.N.Y. 2017)(awarding disgorgement of $197,500 and civil penalty in amount of $125,000).

Accordingly, it is respectfully submitted that in light of the SEC allegations and jury finding that Mr. Fowler violated a number of securities laws in carrying out a single scheme, and given the disgorgement amount of $116,181.50, a single-violation penalty of $150,000 is more appropriate than the per-statute penalty requested by the SEC.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully submitted that denial of Plaintiff's motion for the imposition of remedies and penalties is warranted.

Dated:  July 12, 2019

McCORMICK & O'BRIEN, LLP


                                                          _____
                                                          /s/

                                                          Liam O'Brien, Esq.
                                                          Harry Delagrammatikas, Esq.
                                                          *Attorneys for Defendant*
                                                          9 East 40th Street, Fourth Floor
                                                          New York, New York 10016
                                                          (212) 320-8972